# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DAVID WALLS,

        Plaintiff,

-vs-                                    Case No.  6:15-cv-554-Orl-DAB

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's applications for disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff applied for benefits, alleging that he became unable to work on November 13, 2013 (R. 148-59). The agency denied Plaintiff's applications initially and upon reconsideration, and he requested and received a hearing before an administrative law judge ("the ALJ"). On October 23, 2014, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 11-22). The Appeals Council denied Plaintiff's request for review (R. 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed his Complaint (Doc. 1), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge, and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to a mental impairment, bilateral microndular lung disease, shortness of breath, fatigue and a foot drop (R. 44-47, 170).

*Summary of Evidence Before the ALJ*

Plaintiff was forty five years old at the decision date (R. 148), with a twelfth grade education and past relevant work in lawn service (R. 171).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections.  In addition to the medical records and opinions of the treating providers, the record includes the testimony of Plaintiff and a Medical Expert; written forms and reports completed by Plaintiff, his mother, and a friend; and opinions from non-examining state agency consultants.

By way of summary, the ALJ determined that: "The claimant has the following combination of severe impairments: acute respiratory failure, improved, but with subsequent atrial fibrillation secondary to hyperthyroidism; hypertension; right foot drop; chronic obstructive pulmonary disease (COPD); and obesity (20 CPR 404.1520(c) and 416.920(c))" (R. 13), but his alleged mental impairment was non-severe (R. 14-15). The ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 15) and determined that Plaintiff had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) as follows: Lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 2 hours total in an 8-hour workday, and sit 6 hours total in an 8-hour workday. No climbing ladders, ropes, or scaffolds. Occasionally balance. No work in hazardous environments, including machinery and unprotected heights, or frequent exposure to fumes, odors, dusts, gases, and poor ventilation.

(R. 15).

The ALJ found that Plaintiff was unable to perform any past relevant work (R. 20).  The ALJ then applied the Medical Vocational Guidelines, noting that:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28 and

> Rule 201.21. However, the additional limitations have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of these rules.

(R. 21). The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 13, 2013, through the date of this decision" (R.21).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that the Commissioner's decision was not formulated in accordance with proper standards and was not based upon substantial evidence. Specifically, Plaintiff contends that

the ALJ should have given substantial weight to the opinion of Walls's treating physician, Dr. Robinson asserting that the reasons that the ALJ gave for rejecting that opinion are not supported by the record. The Court evaluates this objection within the context of the sequential evaluation process.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Evaluating Opinion Evidence*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) Substantial weight must be given to the

opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. *Lewis,* 125 F.3d at 1440.  A consultative examiner's opinion, however, is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight).  Nonetheless, all opinions, even those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. *See* 20 C.F.R. §§ 404.1527, 416.927, and *Winschel*.

Applied here, the record includes opinions from several sources.  At hearing, Medical Expert Murray Gilman, M.D. testified that he reviewed all of Plaintiff's records through March 2014, and concluded that Plaintiff had "recovered from his acute illness" and did not have any lasting medical problems other than his right foot drop (R. 36-37). Dr. Gilman opined that Walls could perform sedentary work. (*Id.*). The state agency non-examining medical consultant Carlos Suarez, M.D., reviewed the medical records and limited Plaintiff to medium level work (R. 68-79).  Additionally, Plaintiff's treating physician, David Robinson, D.O., of Brevard Health Alliance ("BHA") treated Plaintiff from his release from the hospital (R. 1307-1411; 236-251).  Included in these treatment notes is Dr. Robinson's May 2014 opinion that Plaintiff was disabled "as he is unable to return to work due to his foot drop, need for [a] cane and a pronounced limp as well as anticoagulation which places him at high risk for injury and bleeding" (R. 1364). Plaintiff's objection goes to the ALJ's evaluation of Dr. Robinson's opinions.

As set forth in detail in the ALJ's decision, the ALJ considered the treating records of Dr. Robinson, and gave his opinions "little rather than controlling weight," noting normal examinations and asymptomatic findings,[1] and reasoning, in part:

Apart from the medications and references to at-home therapy, no other treatment has been undertaken, likely due to limited funds and resources. With regard to the claimant's right foot drop, the BHA records showed that he was given a script for a splint, which he was advised to wear daily for support (page 98); however, he was unable to afford to get one (page 89). He was prescribed and referred to physical therapy; however, there was no evidence that such physical therapy was undertaken beyond what he underwent while hospitalized. Dr. Robinson also referred him to be fitted for a kick brace to prevent tripping (page 72) as well as a support hose for the leg to [be] worn daily due to associated right leg polyneuropathy (page 45), noting that the claimant transitioned from the use of a walker to a cane. Despite noting the claimant's use of assistive devices, Dr. Robinson's last documented physical examination referencing the use of a cane was in May 2014 (page 61). Despite clinic visits since that time and including the most recent visit in September 2014, there have been no references to the need for assistive devices.

(Exhibit 6F) While the claimant initially had complaints of fatigue, shortness of breath with exertion, weakness, and poor balance post-hospitalization, the latter complaints were assessed to be the results of deconditioning/prolonged bed confinement (from the hospitalization), for which he was encourage[d] to walk daily/exercise at home (pages 92, 98-99). With medication management of his conditions, **the BHA records showed that he then mostly complained of problems with the right foot/leg, including with regard to pain, such as at the May 2014 visit with Dr. Robinson, where he denied fatigue and shortness of breath with exertion, but admitted to muscle weakness and loss of strength** (pages 58-62). Dr. Robinson noted that the claimant had a pronounced limp and prominent foot drop on the right. **Dr. Robinson opined that the claimant needed to walk with a cane at all times to avoid falling and was unable to work due to the foot drop, need for a cane and a pronounced limp, and anticoagulation, which placed him at high risk for injury and bleeding (see also Exhibit 15E/7, similar no work opinion).**

Despite Dr. Robinson's established treating history with the claimant, the BHA records showed that the claimant's atrial fibrillation was asymptomatic, with no signs or symptoms of bleeding or bruising, as well-documented, and that his overall conditions were generally well-managed with medications, without evidence of complications, hospitalizations (following the January 2014 hospitalization), or end-organ damage due to any condition. The claimant had no reported adverse side effects to medication and despite office visit notes dated to September 2014, there was no further mention of the need for an assistive device. **Accordingly and pursuant to SSR 96-2p**, little rather than controlling weight is given to Dr. Robinson's opinions, given the available

---

[1] *See* detailed summary at R. 17-18.

evidence, the physical examinations of record, and other evidence that showed he had improved and was improving since the initial November 2013-January 2014 hospitalization.

(R. 18-19; emphasis original).

Plaintiff argues that the rationale offered for discounting the opinion of Dr. Robinson is not supported by substantial evidence in that 1) the medical evidence does not show that he was asymptomatic; 2) treatment notes support the opinion that Walls needs to use a cane for walking; and 3) the opinion of the testifying Medical Expert does not provide a basis for rejecting Dr. Robinson's assessment because the ME admitted that his opinion could change if Plaintiff's symptoms did not resolve following his release from the hospital.

*Asymptomatic*

Plaintiff cites to records indicating complaints of pain, muscle aches/cramping, and shortness of breath, as evidence of "significant medical complications" contradicting the ALJ's conclusion that he was asymptomatic. The ALJ did not find, however, that Plaintiff had no symptoms of any condition. Rather, the ALJ detailed the medical records, and concluded that "the BHA records showed that *the claimant's atrial fibrillation was asymptomatic*, with no signs or symptoms of bleeding or bruising, as well-documented, and that his overall conditions were *generally* well-managed with medications, without evidence of complications, hospitalizations (following the January 2014 hospitalization), or end-organ damage due to any condition" (R. 18-19 emphasis added). The reported symptomology Plaintiff references was either deemed by his doctor to be due to debilitation from the long hospital stay (R. 1398) or relates to Plaintiff's foot drop issue, not atrial fibrillation or any pulmonary issue. Plaintiff acknowledges that the records include normal respiratory exams and a lack of any bleeding or heart damage from the anticoagulation therapy (Brief at 17), and the treatment records are replete with notations that Plaintiff's atrial fibrillation was "asymptomatic" (*see, e.g.* R. 1330, 1332, 1334, 1336, 1338, 1342). The ALJ's finding is supported by substantial evidence.

*The use of a cane*

Plaintiff next contends that the record supports Dr. Robinson's finding that Plaintiff must use a cane, citing to treatment notes of May 2014, and prior.  The issue, however, is not whether the evidence can support an *alternative* finding, but whether *the ALJ's* finding is supported by substantial (not unanimous) evidence. Here, the ALJ acknowledged the treatment notes of Dr. Robinson, but discounted the opinion that Plaintiff required constant use of a cane, noting that Dr. Robinson's last documented physical examination referencing the use of a cane was in May 2014, and "[d]espite office visit notes dated to September 2014, there was no further mention of the need for an assistive device" (R. 19). This finding is amply supported.

Plaintiff acknowledges, as he must, that "none of the later treatment notes mention that Walls must use a cane," but argues that "none of those notes say that Walls's foot drop or his balance issues have resolved, either" (Brief at 18).  While true, this does not necessarily support Plaintiff's conclusion that because "one would expect Dr. Robinson to have noted [any] improvement" and he did not, Plaintiff was still required to use the cane.  For example, Dr. Robinson's treatment notes of June 18, 2014, show Plaintiff to have *increased* polyneuropathy, but the recommendation was only "support hose 25 mmmHg toes to knee worn daily" (R. 1351).  Moreover, on June 10, 2014, Plaintiff presented to Holmes Regional Medical Center with an elevated INR[2] (R. 1264).  The notes indicate that he did *not* have an ambulatory aid nor was he assessed as at risk for falls (R. 1269).  Further, he was discharged walking with a steady gait (R. 1294). The ALJ's finding regarding the absence of any further reference to a cane and his finding that "ongoing need for its use has not been established and

---

[2]The prothrombin time (PT) is used, often along with a partial thromboplastin time (PTT), to help diagnose the cause of unexplained bleeding or inappropriate blood clots. The international normalized ratio (INR) is a calculation based on results of a PT and is used to monitor individuals who are being treated with blood-thinning medication. *See* **Lab Tests Online,** https://labtestsonline.org/understanding/analytes/pt/tab/test/ (last visited Feb. 3, 2016).

medical improvement appears to be ongoing" (R. 19) is supported by substantial evidence.[3]  As an ALJ may discount a physician's opinion when the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), the ALJ's determination with respect to Dr. Robinson's opinion is not shown to be error.

*Dr. Gilman*

Plaintiff's last contention is that the testimony of the medical expert does not provide support for the ALJ's decision to discount Dr. Robinson's opinion.  Plaintiff contends that the ALJ "should not have credited the opinion of Dr. Gilman over that of Dr. Robinson" because Dr. Gilman's conclusion that Plaintiff could perform sedentary work was based on an assumption that Plaintiff's symptoms would resolve, and that assumption is unwarranted (Brief at 23, citing R. 37-40).

As summarized by the ALJ:

Upon review of the claimant's medical record through Exhibit 3F (March 2014), the medical expert testified as to the claimant's medical status. Dr. Gilman noted that the claimant did not meet or equal any physical listing. The claimant had an acute hospitalization with respiratory failure, which he recovered from; however, *due to his right foot drop, he was limited to sedentary work activities*, lift 20 pounds occasionally and 10 pounds frequently, stand 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. He would not be able to work in heights, scaffolds, or ladders. *He would have problems with occasional balancing also due to the foot drop.* The claimant had weakness as a result of being on the ventilator; however, symptoms from his acute illness were expected to resolve and should be non-severe after 12 months. Based on the evidence he reviewed, Dr. Gilman opined that a sedentary residual functional capacity was generous; however, if the claimant's condition had not improved [by November 2014], then a consultative examination might be needed to evaluate his functioning. Dr. Gilman could not comment on whether the claimant would need additional breaks or be off task due to fatigue due to the lack of evidence. Additionally, fatigue was a non-specific symptomology and in the claimant's case, it was expected to improve. The claimant's underlying disease process of hyperthyroidism, taken appropriately with medication, should result in a non-severe impairment. Atrial fibrillation was corrected and COPD was never considered an issue. Essentially, the only severe problem is the recuperative phase of the respiratory failure with symptoms of unknown etiology.

---

[3]Plaintiff's contention that other evidence (the statements of his friend and Walls' testimony regarding his activities) supports Dr. Robinson's opinion is, at best, a contention that the evidence could support a different finding.  The Court agrees. It is not the task of the Court, however, to reweigh the evidence or to make such a finding in the first instance.  Rather, as noted, the issue is whether *this* finding is adequately supported.

(R. 16-17 emphasis added).

As is clear, Dr. Gilman considered all of Plaintiff's alleged conditions and opined that Plaintiff was expected to improve.  That opinion was borne out by the objective evidence noted by the ALJ "including normal/negative studies from a cardiovascular perspective and a thyroid perspective;" "claimant's spirometry, which showed severe obstructive functioning, which was improved with bronchodilation;" and "physical examinations that showed generally normal functioning from a cardiovascular, respiratory, and musculoskeletal perspective, except with regard to a left chest bilateral crepitance and a right foot drop with a limp, as per the BRA records" (R. 19).  Plaintiff does not take issue with any of these records.  Moreover, the ALJ gave great probative weight to Dr. Gilman's assessment for sedentary work, but in doing so, explicitly noted that Dr. Gilman's assessment was limited to the records as of March 2014, and therefore imposed additional limitations, "in light of the additional evidence" (R. 16, 19).  The record reflects a careful, thorough review of the medical evidence and opinions consistent with *Winschel.*

In sum, the ALJ provided a detailed analysis of the evidence of record, supplied a rationale for his findings, and his conclusions are supported by the evidence he cites.  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted).  As the Court finds the decision meets the legal standard, no error is shown.

A final note is in order.  The record shows that Plaintiff is facing some challenges and the Court has no doubt that he is doing the best he can, in current circumstances. Nonetheless, the law defines disability as the inability to do *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or *any other* substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards.  As the Court finds that to be the case, the decision is affirmed.

## Conclusion

For the reasons set forth above, the administrative decision is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 12, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record